RAJ P. SINGH (SBN 269097)
Email: raj@williamsandsingh.com
DREW D. WILLIAMS (SBN 277143)
Email: drew@williamsandsingh.com
**WILLIAMS & SINGH, LLP**
1122 W State Street, Suite E
El Centro, CA 92243
Telephone: (760) 994-4992/Facsimile: (760) 589-1006

*Attorneys for Plaintiff*
KEVIN T. KELLY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN T. KELLY,<br><br>                              Plaintiff,<br><br>v.<br><br>CITY OF POWAY, a municipal<br>corporation,<br><br>                              Defendant. | Case No:  **'19 CV1803 BAS BGS**<br><br>**COMPLAINT**<br><br>(Federal Water Pollution Control Act, 33<br>U.S.C. § 1251 et seq.)<br><br>*JURY TRIAL REQUESTED* |

Plaintiff Kevin T. Kelly, by and through his counsel, hereby alleges:

**I.     Preliminary Statement**

1.  These pleadings address ongoing violations of the Clean Water Act (CWA) and the San Diego Regional MS4 Permit, Order No. R9-2013-0001, as amended by Order Nos. R9-2015-0001 and R9-2015-0100 (2013 MS4 Permit).

2.  This Court has subject matter jurisdiction over the parties and this action because it arises under federal law. The events giving rise to Plaintiff's action and the

1

violations described in these Pleadings occurred, and continue to occur, within this judicial district. See 33 U.S.C. § 1365(a)(1).

3. This action arises out of the unlawful pollution of Warren Canyon and Lake Poway caused by Defendant City of Poway and the residents of Warren Canyon upstream of Lake Poway. The City of Poway is owner and operator of Lake Poway and the upstream portion of the City's MS4 including Warren Crossing, which is an unpermitted manmade dirt road that runs across Warren Creek and leads to the famous peak of Mount Woodson and Potato Chip Rock, and Fisherman's Footbridge, which is part of an unpermitted trail located at the mouth of Warren Creek and within the outskirts of the reservoir.

4. The San Diego Natural History Museum has an exhibit that states the following: "In a place where water is scarce, wet places are precious. [A]t hidden places in our mountains, water springs from the earth. It follows gravity's pull to the ocean." One such place where water springs from the earth is Kelly Spring, which flows into Lake Poway. The spring is on Plaintiff's property and under Poway's jurisdiction.

5. Lake Poway is a reservoir built over an intermittent stream known as Warren Creek in Warren Canyon and within the City of Poway. Warren Creek is fed by spring water on a seasonal basis.

6. Warren Creek is a tributary of the San Dieguito River hence the Pacific Ocean.

7. In 2019, Warren Creek has had consistent stream flow at Kelly Spring on Mount

2

Woodson and into Lake Poway at Boulder Bay everyday between February 5, 2019 and at least through July 15, 2019.

8.  In 2019, stream flow through Warren Crossing was persistent 24 hours a day, 7 days a week from February 5, 2019 through at least June 5, 2019. After June 5, 2019, water flow through Warren Crossing became more intermittent at the surface at this location along Warren Creek and had surface water flows at least during the night and morning hours daily there. For those times that surface flow was not present, water flowed underground near the surface and reemerged as a continuous, persistent visible stream at the Boulder Bay area of Lake Poway.

9.  In 2019, the City of Poway was mandated under its 1987 water rights license agreement with the State Water Resources Control Board to release water from Lake Poway dam to the natural stream below the dam and to the San Dieguito River and hence to the Pacific Ocean everyday between June 1, 2019 to August 10, 2019 because there was persistent stream flow in the Boulder Bay area of Lake Poway during that time period.  This evidence shows that Lake Poway is not a terminal reservoir.

10. The City of Poway failed to release the water from Lake Poway to the natural stream below the dam as mandated by its licensing agreement between June 1, 2019 to August 10, 2019. Poway is only allowed to keep the natural spring water flowing in Warren Canyon between November 1 of each year to May 31 of the succeeding year and must release any natural spring water and rising

groundwater that flows outside that time period.

11. The City of Poway is the owner and operator of the Lake Poway Recreation Area which includes the City-owned MS4 which receives discharges of stormwater, non-storm spring waters, rising groundwaters, and unpermitted dredged and fill materials from the City's activities as well from residents of Warren Canyon upstream of Lake Poway under the City of Poway's jurisdiction.

12. The City of Poway is ultimately responsible for all of these discharges into and from its MS4 into receiving waters including into Lake Poway which has been deemed "Waters of the United States" by the EPA and the State of California.

13. The MS4 Permit recognizes that "historic and current development makes use of natural drainage patterns and features as conveyances for runoff." 2013 MS4 Permit, Finding 11. Further, "[r]ivers, stream and creeks in developed areas used in this manner are part of the [City's] MS4 regardless of whether they are natural, anthropogenic, or partially modified features." Id.

14. Although semirural in nature, Warren Canyon including the Lake Poway area is a developed area of the City of Poway, with unpermitted dirt and paved roads traversing the area including over its watercourses.

15. Warren Creek is both an MS4 and a receiving water.

16. Failure to obtain mandatory permits for activities at the sites in question (i.e. within USGS blue-lined intermittent/seasonal streams and adjacent wetlands) violates the Clean Water Act's prohibition on unpermitted discharges and

unpermitted disturbance of watercourses. These failures are demonstrated by the discharges of polluted stormwater and non-storm water containing pollutants coming through Warren Crossing and into Lake Poway and aggravating a condition of pollution in the reservoir.

17. MS4 Permit violations are violations of the Clean Water Act and its implementing regulations and are grounds for enforcement under the Act, including citizen enforcement actions seeking civil penalties. 2013 MS4 Permit, Standard Permit Provisions I and Attach. B 1.a.; see also 33 U.S.C. § 1365(a); 40 C.F.R. § 122.41(a) (Dec. 21, 2015).

18. Under its 2013 MS4 Permit, the City of Poway is responsible for adequately addressing the phosphorous-laden and the nutrient-rich non-storm water and accompanied sediment pollutants which exceeds Poway's non-storm water action levels (NALs) for several constituents that has been discharged into its MS4 and into Lake Poway on a daily basis during the times of the year when there is non-storm stream flow through Warren Canyon.

19. Defendant has operated the Lake Poway Recreational Area and Warren Crossing in violation of the Clean Water Act by: failing to obtain permits from the United States Army Corps of Engineers ("Army Corps") for dredge and fill activities within the Army Corps' jurisdiction, including its boat dock over Lake Poway, which was accepted as completed and finalized by Poway's City Council on November 21, 2017; failing to comply with the City of Poway's 2013 MS4

Permit's water pollution control requirements for development projects; failing to obtain water quality certifications from the State of California before disturbing Warren Creek, its banks, and other onsite federal waters including Lake Poway; failing to fully enforce the Clean Water Act and the 2013 MS4 Permit requirements against the residents of Warren Canyon upstream of Lake Poway to stop the recurring pollution resulting from unpermitted stream crossings on private property over Warren Creek; failing to monitor septic tanks in Warren Canyon as required by the 2013 MS4 Permit; and failing to adequately address the spring water containing pollutants that has been discharged into Poway's MS4 as a source of pollutants to the receiving waters of Warren Crossing and the reservoir.

## II. JURISDICTION

20. These Pleadings are brought under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq., more commonly called the Clean Water Act ("Clean Water Act" or "CWA"). See 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory/injunctive relief under the Constitution and laws of the U.S.).

21. Defendant the City of Poway was served with a notice of Plaintiff's intent to sue for violations of the CWA, via certified and registered mail, return receipt

requested, on May 24, 2019. More than sixty days have passed since Defendant received the Supplemental Notice of Violations Letter (May 24, 2019 NOV). Defendant has not remedied the CWA violations that are the subject of the NOV.

22. No regulatory agency has commenced and is diligently prosecuting any action to address the illegal activity that is the subject of this action.

23. Plaintiff provided Notice of Defendant's violations of the Clean Water Act to the Administrator of the United States Environmental Protection Agency (US EPA); the Administrator of the US EPA Region IX; the Attorney General of the United States; the Executive Director of the California State Water Resources Control Board ("State Board"); and the Executive Officer of the California Regional Water Quality Control Board, San Diego Region ("San Diego Water Board"), in full compliance with the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), and the regulations adopted thereunder, 40 CFR § 135.1 et seq.

24. The United States District Court for the Southern District of California has jurisdiction to, inter alia, order civil penalties and grant declaratory, injunctive, and equitable relief, including but not limited to an order to comply with the CWA and applicable permits thereunder. 33 U.S.C. § 1365(a).

25. This action is not barred by any prior administrative penalty under Section 309(g) of the Clean Water Act, 33 U.S.C. § 1319(g).

26. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this

judicial district, and under 33 U.S.C. § 1365(c)(1) because the sources of the violations described in these Pleadings are located within the district.

27. Plaintiff seeks relief from Defendant's violations of the procedural and substantive requirements of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

28. The United States District Court for the Southern District of California also has supplemental jurisdiction over all other claims that are so related to the claims within such original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution. 28 U.S.C. § 1367.

## III.   PARTIES

### A. Plaintiff

29. Plaintiff is a taxpaying citizen of Poway and owns 43 acres of key watershed land that contain streams and springs feeding Lake Poway (APNs 278-210-1800, 278-210-3000, 278-210-2900, 278-210-0300, and 278-210-0400).

30. Three of these parcels contain streams and wetlands: APN: 278-210-1800, 278-210-3000, and 278-210-2900.

31. Plaintiff has purchased these five parcels with the intention of establishing a wetlands and streams mitigation bank from which environmental compensation credits can be sold to developers and municipalities such as Poway.

32. Plaintiff has submitted his mitigation bank proposal entitled the Mount Woodson-Rock Haven Springs Mitigation Bank to the California Department of

Fish and Wildlife and paid a processing fee for its review.

33. The City of Poway's policies and omissions concerning the watershed feeding Lake Poway has harmed, and will continue to harm, Plaintiff's economic interests without relief from this Court.

34. As a recreational user of the City's reservoir and the surrounding natural environment, he, along with his family, has hiked around, boated in, and fished in the Boulder Bay area and other areas of Lake Poway including Warren Crossing and Fisherman's Footbridge that have and will be affected by the City of Poway's illegal activities in waters of the state and United States. He hopes to continue to recreate in the Lake Poway area with his family in the future without the seasonal intermittent plumes of sedimentation and other pollutants gradually filling in Lake Poway over time and harming wildlife through oxygen-depleting eutrophication and the toxic products that the City uses to combat eutrophication.

35. He has a passion for protecting wetlands including the wetlands in, adjacent to, and above Lake Poway and enhancing the human use and enjoyment of those natural resources.

36. It is Plaintiff's position that Lake Poway is Waters of the United States as defined by federal law and that the City of Poway's regional storm water and non-storm water permit (the 2013 MS4 Permit) is enforceable in the sub-watershed area above Lake Poway, even under Justice Scalia's plurality opinion in Rapanos v. United States, 547 U.S. 715 (2006).

37. As owner of the spring (Kelly Spring near the base of Mount Woodson on APN: 278-210-1800) that contributes the largest amount of non-storm spring water into Lake Poway on a seasonable basis, Plaintiff wants to work with the City of Poway and the San Diego Water Board to find the best solution to reduce and segregate the non-storm water from the City's MS4 through stream rehabilitation projects that will create new wetlands and recharge the underground aquifers and will improve the water quality of Lake Poway and the San Dieguito watershed in general.

38. The water from Kelly Spring, which flows into the northern drainage feature on Plaintiff's property, eventually is discharged into privately owned culverts and then through the city-owned MS4 at APN: 278-290-1000, the City of Poway's open space resource management area, through a city-owned 48-inch culvert, under a city-owned wooden footbridge conveyance, and into Lake Poway at APN: 278-280-2300. The water from Kelly Spring has become polluted in the past from various unpermitted point-source culvert crossings and other illegal connections such as failing septic tanks and other discharges placed directly in Warren Creek by private landowners before being discharged as non-storm water containing pollutants into the City's MS4 and into Lake Poway.

39. According to the Trump Administration's proposed WOTUS rules, the groundwater from Kelly Spring is the <u>main</u> reason why Clean Water Act jurisdiction applies to Warren Creek and downstream Lake Poway.

40. The spring water from Kelly Spring is also a source of pollutants to receiving waters because of the water's high iron and phosphorous content and because the wetlands surrounding the spring has been altered by tractors, culverts, and vegetation removal without permits over the past 50 years, including in 2016.

41. The water from Rock Haven Spring that is discharged into the City's property at APN: 278-210-1100 then flows onto Plaintiff's property at APN: 278-210-1800 at the southern drainage feature on the acreage before being discharged into various point sources on private and public property and into Lake Poway further downstream.

**B. Defendant**

42. The City of Poway is a California General Law City and municipal corporation, duly organized and existing by virtue of the laws of the State of California and the charter of the City of Poway.

43. The City of Poway operates a modern water collection, treatment, and distribution system.

44. The City of Poway owns and/or operates Lake Poway, which is one source of the City's drinking water supply, and owns portions of the area upstream of Lake Poway including APNs 278-280-2300; APN 278-281-0100; APN: 278-290-1000; and APN: 278-210-1100.

45. The City's parcel, APN: 278-210-1100, contains locally known Rock Haven Spring, a significant source of non-storm spring water that flows first through the

City of Poway's property and then through Plaintiff's private property (APN: 278-210-1800) before reentering the City's MS4 by Lake Poway on APN: 278-290-1000.

46. The City's parcels contain point sources that have caused, have threatened to cause, and have served as a conduit for pollution into Lake Poway.

47. By law, the City of Poway also has enforcement authority over the residents of Warren Canyon and their unpermitted point sources that are placed within their privately owned portions of Warren Creek because the creek is interrelated and becomes part of a municipal conveyance system downstream.

48. Lake Poway is a year-round navigable-in-fact waterbody and is considered waters of the United States for the following reasons: because it has been used in interstate commerce; because it is flooded by an intermittent stream that contains non-storm spring water flows; because it has a significant nexus to a traditional navigable body of water; and because water from the reservoir can reach the Pacific Ocean 17 miles away during a 25-year storm event and/or after mandated water releases from an outlet pipe.

49. The City of Poway is seeking to devalue the wetlands that Plaintiff owns above Lake Poway by wrongly arguing that Warren Creek is merely an "ephemeral" tributary and that Lake Poway is a "terminal reservoir" and not Waters of the United States according to Justice Scalia's plurality opinion in Rapanos v. United States, 547 U.S. 715 (2006).

## IV.    FACTUAL ALLEGATIONS

50. More than 90% of the time when the stream flow through Warren Crossing consisted of dry-weather, non-storm spring water between the months of April, May and June 2019, the permitted MS4 contribution of phosphorous into Warren Creek and into Lake Poway (0.1 mg/L maximum daily action level (MDAL) non-storm water action level (NAL)) has been exceeded, oftentimes at levels double the amount allowable under the City's MS4 Permit, Poway's Jurisdictional Runoff Management Plan (JRMP), and the San Diego's Basin Plan.

51. From February 16, 2019 to March 28, 2019, the permitted MS4 contribution of iron into Warren Crossing and into Lake Poway from non-storm water discharges (0.3 mg/L maximum daily action level non-storm action level (NAL)) was exceeded more than 50% of the time.

52. The turbidity levels exceeded the storm water action levels (SALs) on February 14 and 15, 2019 at the mouth of Warren Creek at Fisherman's Footbridge.

53. Total Nitrogen levels of discharges from Warren Crossing into Lake Poway exceeded the NAL as adopted in Poway's JRMP periodically and on at least two occasions between February 5, 2019 and June 5, 2019.

54. Exceeding a NAL as established in the Basin Plan, the 2013 MS4 Permit, and Poway's JRMP is evidence that non-storm water has been anthropogenically influenced.

55. One of the main sources of soluble phosphorous into the City of Poway's MS4 is from Kelly Spring, located at 32.9998 Latitude, -116.9749 Longitude, which is under the City of Poway's jurisdiction and on Plaintiff's property. Total Phosphorus levels from discharges from Kelly Spring exceeded the NAL more than 90% of the time between April 1, 2019 and June 5, 2019.

56. By June 13, 2019, volume flows from Kelly Spring dropped below 5 gallons per minute and the reduced volume flows resulted in discharges below the NAL for total phosphorous due to biological uptake.

57. Over the last 50 years, including as recently as 2016, the residents of Warren Canyon have altered the wetland system surrounding Kelly Spring, resulting in the reduction of its phosphorous-retention capacity.

58. Other wetland systems in Warren Canyon including on the City owned property surrounding Warren Crossing, located at 33.003 Latitude, -117.006 Longitude, have also lost pollutant-retention capacity as a direct result of anthropogenic activity.

59. Increased nutrient concentrations – such as nitrogen and phosphorous – in natural water systems, can impact water quality and clarity and contribute to algae blooms that impact native vegetation and interfere with the springs' ecosystems and Lake Poway's ecosystem. Increases in nutrients in Poway's ecosystems and water resources result from a variety of activities, including illegal earth moving activities over the creek, unpermitted dirt-backfilled culverts

14

and/or fords at a dozen locations upstream of Lake Poway, wetlands vegetation removal, and failing septic tanks in Warren Canyon.

60. Biological uptake of pollutants such as nitrogen and phosphorous from the spring water in Warren Canyon has been reduced by wetland destruction at specific locations in Warren Canyon, including at Warren Crossing and on APN: 278-210-1800, the parcel containing Kelly Spring.

61. Excessive bacterial and nutrient levels of the spring water discharges as measured at Warren Crossing through the months of February, March, April, May, and June 2019 which exceeded NALs listed in Poway's JRMP indicated that leaking septic tanks in Warren Canyon have contributed to excess pollution in Lake Poway.

62. The City of Poway's MS4 Permit and JRMP require it to minimize spring water flows containing pollutants[1] into its MS4 through rehabilitating damaged streams and re-establishing wetlands[2] to address and reduce the non-storm water discharge flows that are a source of pollutants aggravating a condition of

---

[1] The 2013 MS4 Permit, C-8, defines "pollutant" as follows: "Any agent that may cause or contribute to the degradation of water quality such that a condition of pollution or contamination is created or aggravated." Caltrans's MS4 permit has a more limited definition of "pollutant."

[2] According to the San Diego Water Board, re-establishment means the manipulation of the physical, chemical, and/or biological characteristics of a site with the goal of returning natural/historic functions to a former aquatic resource. Re-establishment results in rebuilding a former aquatic resource and results in a gain in aquatic resource area and functions.

pollution in Warren Creek and in Lake Poway.

63. A condition of pollution has been occurring in Warren Creek and in Lake Poway over the last fifty years, which was recently highlighted in 2017 when a massive winter storm resulted in the destruction of approximately ten man-made conveyances (e.g., dirt backfilled culverts and/or fords) throughout Warren Canyon in the City of Poway, with the unpermitted waste being deposited in downstream portions of Warren Creek including Lake Poway.

64. Neither the residents of Warren Canyon nor the City of Poway obtained the proper CWA permits for the man-made conveyances (point-source stream crossings) built over Warren Creek that were blown out by the massive amount of storm water runoff that occurred in 2017 and in 2019.

65. Some residents of Warren Canyon rebuilt these manmade conveyances after the winter storms of 2017 without the proper CWA permits and water quality certifications from the San Diego Water Board.[3]

66. Even the City of Poway failed to obtain the proper CWA permits and water quality certifications for its rebuilding activities in Warren Creek and Lake Poway in 2017, including the Warren Crossing project over Warren Creek as

---

[3] Obtaining CWA permits is not merely a procedural requirement; properly engineered structures that could withstand a 100-year storm – i.e. something other than a dirt-backfilled culvert system – would have been built throughout Warren Canyon if Warren Canyon residents and the City of Poway obtained valid permits approved by Department of the Army and the San Diego Water Board.

well as the boat dock replacement project within the navigable portion of its

receiving waters at Lake Poway.

67. The condition of pollution occurring in Warren Canyon has caused and

threatened to cause the loss of water storage capacity of Lake Poway, a reservoir.

68. The condition of pollution occurring in Lake Poway has also caused and/or

threatened to cause eutrophication in fishable Lake Poway from the nutrient-rich

sediment and nutrient-rich non-storm water flows coming through the City's

MS4, threatening to accelerate swamp-like conditions in Lake Poway.

69. The City of Poway has tried to combat eutrophication in Lake Poway by adding

algaecides such as copper sulfate, a toxic compound. City staff adds up to 300

pounds of this compound to Lake Poway in a typical year.

70. Lake Poway is within the San Dieguito River (SDR) Watershed Management

Area (WMA) which encompasses a total of 346 square miles extending from San

Dieguito Lagoon in the west to Volcan Mountains in the east.

71. Small creeks drain downstream into the San Dieguito River, then into the San

Dieguito Lagoon, and finally into the Pacific Ocean.

72. In comparison, the subwatershed area that feeds Lake Poway itself, which has

been deemed "waters of the United States" (WOTUS) by the Environmental

Protection Agency (EPA) and the State of California, is quite small,

encompassing only 1200 acres or less than 2 square miles of the entire SDR

watershed.

17

73. Lake Poway is mainly fed by two headwater intermittent streams draining Mount Woodson and Rock Haven, natural mountain springs that feed these intermittent streams, and a series of separate smaller tributaries that drain other portions of the surrounding mountainsides directly into the reservoir.

74. At the Boulder Bay area of Lake Poway, the main fourth-order intermittent stream feeding the reservoir is known as Warren Creek; collectively, all surrounding drainage into Lake Poway, including Warren Creek, is known as Warren Canyon.

75. The City of Poway has at least two National Pollutant Discharge Elimination System (NPDES) permits for discharges into Lake Poway, including the 2013 municipal separate storm sewer systems (MS4) Permit – the 2013 MS4 Permit – for point-source discharges from Warren Creek and Warren Canyon into Lake Poway issued by the San Diego Water Board.

76. The City of Poway also has a NPDES permit for copper-based algaecides injections used to combat eutrophication within Lake Poway issued by the State Water Board.

77. Fulfilling certain requirements of the 2013 MS4 Permit, the City of Poway has an approved Jurisdictional Runoff Management Plan (JRMP) specific to the City of Poway and, along with five other municipalities within the SDR WMA, an approved Water Quality Improvement Plan (WQIP).

78. Poway has discharged and continues to discharge unreasonable amounts of

sedimentation pollution waste (and other assimilated pollutants in storm water and non-storm water) from its MS4 in a manner that is causing, or threatening to cause, a condition of pollution – i.e. the loss of municipal storage capacity, harm to recreational activities such as fishing, and harm to aquatic species through threatened eutrophication – in Lake Poway, a receiving water of the state and WOTUS, in violation of its 2013 MS4 Permit, Provision A.1.a.

79. Poway's discharges (including the discharges of third parties within and under its jurisdiction) that are causing a condition of pollution in Lake Poway are inherently in violation of the waste discharge prohibitions incorporated in the San Diego Water Board's Basin Plan in violation of Provision A.1.c. These discharges have contributed to a violation of water quality standards, including those in the Basin Plan. 2013 Permit, Provision A.2.a.; Id. at A.2.a.(1).

80. NPDES MS4 Permits are contracts, and they are to be interpreted as contracts. Nat. Res. Def. Council v. County of L.A., 725 F.3d 1194, 1204-05 (9th Cir. 2013).

81. "The plain language of CWA § 505 authorizes citizens to enforce *all* permit conditions" in such contracts. Nw. Envtl. Advocates v. City of Portland, 56 F.3d 979, 986 (9th Cir. 1995) (emphasis in original).

82. The Ninth Circuit has held that Congress authorized enforcement of state water-quality standards in MS4 permits, "lest municipalities be immunized on the technicality that not all water standards can be expressed as effluent

19

limitations."[4] <u>Nat. Res. Def. Council v. County of L.A.</u>, 673 F.3d 880, 886 (9th Cir. 2011) (rev'd on other grounds and remanded by 133 S. Ct. 710 (2013)).

83. "Only by enforcing the water-quality standards themselves" in an MS4 Permit ensures that the "gross amount of pollution discharged" from "uncontrollable storm events" will be addressed by a municipality with improved water quality improvement strategies, even a city that may be in general compliance with technology based effluent limitations as outlined in an approved JRMP.[5] <u>See Natural Resources</u>, 673 F.3d at 886.

84. The CWA "does not distinguish between those who add [pollutants] and those who convey what is added by others – the Act is indifferent to the originator of water pollution." <u>Natural Resources</u>, 673 F.3d at 886.

85. By virtue of collecting and channeling stormwater and non-storm water through municipality-owned culverts and other conveyances, a city assumes responsibility under the CWA for receiving such pollutants from others through its point sources.[6] <u>See Committee to Save v. East Bay Muni. Util. Dist.</u>, 13 F.3d

---

[4] Ninth Circuit case law "emphasizes that NPDES permit enforcement is not scattershot – each permit term is simply enforced as written." L.A., 673 F.3d at 886.

[5] <u>See Sierra Club v. Union Oil</u>, 813 F.2d 1480, 1491 (9th Cir. 1987) ("It is unclear whether the court intended to excuse these violations under the upset defense or under a de minimus theory. In either event, the district court erred. The Clean Water Act and the regulations promulgated under it make no provision for 'rare' violations.")

[6] The City of Poway is ultimately responsible for regulating the activity of its citizens in Warren Canyon; according to the CWA, the implementing permits, and case law, Poway cannot continue to turn a blind eye to the illegal activity occurring there.

20

305 (9ᵗʰ Cir. 1993).

86. As described by the EPA, water quality criteria "can be . . . narrative (e.g., a criterion that describes the desired conditions of a water body being 'free from' certain negative conditions)" in form. EPA, WQS Handbook, Chapter 3; see 2013 MS4 Permit, F-16.

87. Water quality standards as defined in CWA § 303(c) consists of the beneficial uses (e.g., recreational activities such as fishing, municipal drinking water supply, etc.) of a water body and water quality objectives necessary to protect those uses.

88. A condition of pollution exists when the water quality needed to support designated beneficial uses has become unreasonably affected or impaired by waste.[7] 2013 MS4 Permit, C-11–C-12; Cal. Water Code § 13050(l).

89. Waste broadly "encompasses any substance whose formation was caused by human activity or whose path through the ecosystem is controlled or affected by human agency." Phaler, Water Quality Control in CA, 1 Ecology L.Q. 400, 406

---

[7] Under the Dickey Act, 'pollution' means an impairment of the quality of the waters of the State by . . .waste to a degree which does not create an actual hazard to the public health but which does adversely and unreasonably affect such waters for domestic, industrial, agricultural, navigational, recreational or other beneficial use. Dickey Act, Ch. 1549, § 1, [1949] Cal. Stat. 2782, as amended, ch. 603, § 1, [1957] Cal. Stat. 1815. The updated Porter-Cologne Act does not require that an adverse effect be shown. Cal. Water Code § 13241.

(1971).[8]

90. The San Diego Water Board Basin Plan prohibits the following "waste" discharges: 1) Discharge of pollutants or dredged or fill material to waters of the United States except as authorized by a NPDES permit or a dredged or fill material permit; 2) Discharge of waste to inland surface waters in a manner causing a condition of pollution; 3) Discharge of waste in a manner causing flow, ponding, or surfacing on lands not owned or under the control of the discharger; 4) The dumping, deposition, or discharge of waste directly into waters of the state or adjacent to such waters in any manner which may permit its being transported into the waters; 5) Discharge of waste into a natural or excavated site below historic water levels; and 6) Discharge of sand, silt, clay or other earthen materials from any activity, including land grading and construction, in quantities which cause deleterious deposits, turbidity or discoloration in waters of the state or which unreasonably affect or threaten to affect beneficial uses of such waters. 2013 MS4 Permit, A-1–A-2.

91. The reasonableness of a waste discharge is question of fact.[9]

---

[8] Under the Dickey Act, earth eroded from tractor trails and the deposition of fine-grained particles which affect fish and other aquatic life and reservoir capacity constituted waste discharge. Under the Porter-Cologne Act, it was the legislators' intent to include the prior constructions of waste in the new definition of waste. Cal. State Water Resources Control Board, Study Panel Report, App. A, at 23-24 (1969).

[9] The Ninth Circuit has held that the terms of an NPDES permit, where ambiguous on its face, raises issues of fact. Northwest Environmental Advocates v. City of Portland, 56 F.3d 979, 982 (9th Cir. 1995).

22

92. In the City of Poway, anthropogenic sources of pollutants—namely unpermitted discharges of dredged and fill materials placed around culverts by the City and by private third parties in Warren Canyon in the past 50 years to the present – have become mobilized and discharged into the mouth and other portions of Warren Creek and into Lake Poway as an unreasonable amount of waste from and through Poway's point sources in violation of its 2013 MS4 Permit. The approximate location of the unpermitted point sources that were partially washed out as a result of the February 2017 and February 2019 winter storms in Warren Canyon are as follows:

a. 33.001298, -117.003004 (APN: 278-290-1100);

b. 32.998925, -116.998575 (APN: 278-300-5000);

c. 32.998802, -116.997127 (APN: 278-300-5900);

d. 33.001296, -117.003004 (APN: 278-290-0600);

e. 32.9990, -116.9961 (APN: 278-200-1900);

f. 32.9992, -116.9934 and 32.9993, -116.9927 (APN: 278-200-0700);

g. 32.998671, -116.981069 (APN: 278-200-0200);

h. 32.998204, -116.977989 (APN: 278-210-1500);

i. 32.9980, -116.9761 (APN: 278-210-1800);

j. 32.9990, -116.9756 (APN: 278-210-1800);

k. 32.998103, -116.976631 (APN: 278-210-1600);

l. 32.9992, -117.0003 (APN: 278-300-6000); and

m. 33.0030, -117.0057 (APN: 278-280-2300).

93. Septic tanks are located in proximity to several of the aforementioned point sources in Warren Canyon. At least one these septic tanks failed in 2019 and contributed some of the nutrient and bacterial pollution at Warren Crossing and into Lake Poway.

94. These unpermitted discharges have caused and are causing a condition of pollution in Lake Poway. The man-made conveyances in Warren Canyon were mostly washed out on (or around) February 27, 2017 and again on (or around) February 14, 2019. However, residual waste continued to be washed down into Lake Poway after those dates.

95. The pollution is ongoing because the waste remains in the mouth and other portions of the creek and has become further and further discharged into the reservoir with each passing year and each large storm event and because waste – i.e. unauthorized discharges such as unpermitted dredged and fill and earth eroded from tractors – has been subsequently added to Warren Creek by the City and by other Poway residents of Warren Canyon after the winter storms of 2017 and 2019 without the proper permits.[10]

96. Lake Poway is being affected by waste to the extent that the reservoir is

---

[10] The following parcels have unpermitted rebuilt crossings constructed after the winter 2017 storms: APNs: 278-200-0700; 278-200-1900; 278-280-2300; 278-290-1100; 278-300-5900; 278-290-0600; 278-210-1500; 278-300-6000; 278-200-0200; 278-300-5000; and APN: 278-210-1600.

24

regularly losing its storage capacity, even more dramatically as shown after the February 14, 2019 winter storms (see May 24, 2019 NOV, Exhibit 2), and recreational activities such as fishing are being impaired because of deleterious deposits removing fishing spots and causing turbidity, eutrophication, and coloration of the waters from iron, nitrogen, and phosphorous-rich water and sediment. The effects of these discharges are the overabundance of harmful cyanobacteria and other algal blooms occurring in Lake Poway, the closure of certain portions of Lake Poway including at Hidden Bay due to swamp-like conditions, the use of toxic copper-based algaecides, and the forced reduction of the water levels and the storage capacity of Lake Poway due to the waste blockage and resulting effects.

97. While Provision B.3.c of the 2013 MS4 Permit provides an option that allows a Copermittee to utilize the watershed-based water quality improvement plan to be deemed in compliance with the prohibitions and limitations of Provisions A.1.a and A.1.c, Poway has not submitted a WQIP that follows the rigorous requirements of Provision B.3.c with respect to the types of pollutants that are being addressed in this lawsuit and cannot prove that it has been deemed in compliance with Provisions A of the 2013 MS4 Permit with regard to Warren Canyon and Lake Poway.

98. The bottom line is that Poway is not shielded from liability for the portion of the 20,000 tons of sediment that is "waste" that has been built up in the Boulder Bay

area of Lake Poway over the years from illegal, unpermitted activity in Warren Canyon.

99. The City must dredge out the unpermitted waste pollution in the Boulder Bay of Lake Poway that has accumulated from the unpermitted dredged and fill materials placed around culverts and other wetland destructive activity that resulted in mobile waste in 2017 and 2019 as well as in previous years in Warren Canyon.

100. At a minimum, the City must remove the unnatural sediment deposits that have occurred and recurred in Lake Poway over the past 5 years to the present.

101. Spring water discharges of nutrient rich waters into the City of Poway's MS4 in Warren Canyon that exceed NALs must be addressed according to the 2013 MS4 Permit and Poway's JRMP. Such discharges must be minimized through stream and wetlands rehabilitation projects.

102. Poway's 2013 MS4 Permit requires that the non-storm spring water that flows into its MS4 and from its MS4 to Lake Poway must be properly addressed through the effective enforcement and implementation of various provisions of the City's 2013 MS4 Permit, particularly the discharge prohibitions and receiving water limitations of Provisions A.1.a., A.1.b., A.1.c., and A.2.a, the adaption of monitoring and assessment program and updates to the water quality improvement plan described in Provision B.5., and the illicit discharge detection and elimination requirements of Provision E.2.

103.   The City of Poway has identified in the public record that spring water flows in its MS4 and reaches Lake Poway, and Poway's JRMP has identified the following pollutants coming from its MS4 in Warren Canyon: Indicator Bacteria, Color, Manganese, Mercury, Nitrogen, pH, Phosphorous, Viruses, Turbidity, and Nutrients.

104.   The non-storm spring water discharges of pollutants into Lake Poway have recurred seasonally because waste from washed-out unpermitted culvert crossings and other wetland destruction activity remains in the creek/MS4 and because non-storm spring water assimilates pollutants from various unpermitted (and illicit) point-sources in Warren Canyon, leading to the non-storm water discharge of sediment and other pollutants into Lake Poway.

105.   Discharges of non-storm spring water directly from Rock Haven (Rock Haven Spring) and from Mount Woodson (Kelly Spring) into the City of Poway's MS4 and into Lake Poway are also themselves sources of soluble phosphorous, nitrogen, and iron pollutants aggravating a condition of pollution in Lake Poway.

106.   Because Warren Canyon and Lake Poway are City-designated Environmentally Sensitive Areas and because these areas are being fed with non-storm water discharges containing pollutants exceeding non-storm water action levels (NALs) on a regular basis during the winter and spring months of non-drought years as shown in the exhibits attached to the May 24, 2019 NOV, the

City of Poway must address these flows as a priority concern as required by Provisions B.5 and E.2.d and must use the resources that it most definitely has to reduce these flows as required by Provision E.2.a.(7) as well as the City of Poway's JRMP (BMP #11).

107.   The City of Poway, though inadvertently identifying that groundwater containing pollutants comes from Warren Canyon into its MS4, has not minimized the polluted spring water before it flows into its MS4 by undertaking feasible projects such as constructing water-trapping weirs and repairing wetlands damaged by humans upstream of the lake.

108.   If Poway chooses not to address the non-storm spring waters that are contributing pollutants to Lake Poway as required by the 2013 MS4 Permit, the City must then obtain a separate NPDES permit for the discharges.

109.   Under its 2013 MS4 Permit and its terms, the City of Poway is responsible for adequately addressing the exceedances of phosphorous and the nutrient-rich non-storm water that is being discharged into its MS4 and into Lake Poway on a daily basis during the times of the year when there is stream flow through Warren Canyon.

110.   Over the last 50 years, including as recently as 2016, the residents of Warren Canyon have altered the wetland ecosystem surrounding Kelly Spring, resulting in the loss of its phosphorous-retention capacity.

111.   Other wetland systems in Warren Canyon including on the City owned

property surrounding Warren Crossing, located at approximately 33.0030 Latitude, -117.0057 Longitude, have lost pollutant-retention capacity as well.

112.   The City of Poway's MS4 Permit and JRMP require it to minimize spring water flows into its MS4 through rehabilitating damaged streams and re-establishing wetlands to address and reduce the non-storm water that is a source of pollutants aggravating a condition of pollution in Warren Creek and in Lake Poway, both receiving waters of the United States.

113.   A condition of pollution has been occurring and recurring in Warren Creek and in Lake Poway over the last fifty years, which was recently highlighted in 2017 when a massive winter storm resulted in the destruction of approximately ten man-made conveyances (e.g., dirt backfilled culverts and fords) throughout Warren Canyon in the City of Poway, with the unpermitted waste being deposited in downstream portions of Warren Creek including at Lake Poway at Boulder Bay.

114.   Neither the residents of Warren Canyon nor the City of Poway obtained the proper CWA permits for the man-made conveyances dredged out of and/or filled over Warren Creek that were blown out by the massive amount of storm water runoff that occurred in 2017 and in 2019.

115.   Some residents of Warren Canyon rebuilt these manmade conveyances after the winter storms of 2017 without the proper CWA Section 404 permits and water quality certifications and/or waste discharge requirements from the San

Diego Water Board. The following parcels have unpermitted rebuilt crossings constructed after the winter 2017 storms: APNs: 278-200-0700; 278-200-1900; 278-280-2300; 278-290-1100; 278-300-5900; 278-290-0600; 278-210-1500; 278-300-6000; 278-200-0200; 278-300-5000; and 278-210-1600.

116.   Even the City of Poway failed to obtain the proper CWA permits and water quality certifications for its rebuilding activities in Warren Creek and Lake Poway in 2017, including its Warren Crossing project located at 33.0030 Latitude, -117.0057 Longitude and its boat dock replacement project located at 33.0069 Latitude, -117.0123 Longitude within the navigable portion of its receiving waters.

117.   The area affected by rebuilding activity in 2017 in Warren Canyon and under the City of Poway's jurisdiction totaled more than an acre and triggered certain requirements of the 2013 MS4 Permit, Provision E.3.b.

118.   The condition of pollution occurring in Warren Canyon has caused and threatened to cause the reduction of the storage capacity of Lake Poway, a drinking water reservoir.

119.   The condition of pollution occurring and recurring in Lake Poway has also caused and threatened to cause eutrophication in fishable Lake Poway from the nutrient-rich sediment and nutrient-rich non-storm water flows coming from the City's MS4, threatening to accelerate swamp-like conditions in Lake Poway.

120.   In previous iterations of the MS4 permits for the San Diego region, certain discharges or flows of non-storm water were "simply listed and referred to as categories of non-storm water discharges 'not prohibited' unless identified as a source of pollutants." 2013 MS4 Permit, F-89. However, the federal NPDES regulations "do not specifically state that such discharges are 'not prohibited' or 'exempt' or in any way authorized." Id.

121.   In the updated 2013 MS4 Permit, all non-storm water discharges must, at a minimum, comply with the discharge prohibitions and receiving water limitations of Provision A.1.a and A.2.a. 2013 MS4 Permit, F-68.

122.   For spring water discharges, the non-storm water action levels (NALs) of Provision C.1 are to be used to determine if the spring water is a source of pollutants aggravating a condition of pollution in receiving waters.[11] Exceedances of the NALs would then provide an indication of the relative severity of a pollutant in non-storm water discharges from the MS4 contributing to potential or observed receiving water quality impacts.

123.    In addition to meeting Provisions A.1.a and A.2.a, the City must fulfill Provision A.1.b which requires that non-storm water discharges be effectively prohibited through the implementation of Provision E.2. 2013 MS4 Permit, at 17.

124.   Provision E.2.a of the City's 2013 MS4 Permit requires each Copermittee to address all types of non-storm water discharges into its MS4 as illicit discharges,

---

[11] The NALs of Provision C.1 are incorporated into the City of Poway's JRMP.

unless the discharge is authorized by a separate NPDES permit or identified as a category of non-storm water discharges or flows that must be addressed pursuant to the requirements of Provision E.2.a.(1)-(7).

125.   For spring water flows under Provision E.2.a.(3), only non-storm spring water discharges not identified under a separate NPDES permit and not identified as a source of pollutants do not have to be addressed as illicit discharges. 2013 MS4 Permit, F-89.

126.   Under Provision E.2.a.(6), if the Copermittee or the San Diego Water Board identifies any category of non-storm water discharges such as spring water as a source of pollutants to receiving waters, the category must be prohibited through ordinance, order, or similar means and addressed as an illicit discharge. Alternatively under Provision E.2.a.(6), the City of Poway may propose controls to be implemented for the category of non-storm water discharges as part of an updated WQIP instead of prohibiting the category of non-storm water discharges, and implement the controls if accepted by the San Diego Water Board as part of an updated WQIP.[12]

127.   In addition to the conditions of Provision E.2.a.(6), "Provision E.2.a.(7) has been included in the requirements for non-storm water discharges to clarify that

---

[12] Rehabilitating streams and repairing wetlands are the types of "controls" contemplated by the 2013 MS4 Permit to reduce flows to the MS4 and retain pollutants in those flows.

any non-storm water discharges to the Copermittee's MS4, even those identified pursuant to Provision E.2.a.(1) through E.2.a.(4) [i.e. spring water], must be reduced or eliminated, unless a non-storm water discharge is identified as a discharge authorized by a separate NPDES permit." 2013 MS4 Permit, F-96. The mandate of Provision E.2.a.(7) for the reduction or elimination of spring water discharges into the MS4 is expected to be completed "where feasible and priorities and resources allow" unless the City obtains a separate NPDES permit for the discharges.[13]

128.   Furthermore, Provision E.2.d describes the measures that the City must take to investigate and eliminate illicit discharges to the MS4. Provision E.2.d.(1) requires the City to "prioritize and determine when follow-up investigations will be performed in response to visual observations . . . of a detected non-storm water **or** illicit discharge to or from the MS4 . . . causing or contributing, or threatening to cause or contribute to impairments in water bodies . . . in environmentally sensitive areas (ESAs)." 2013 MS4 Permit, Provisions E.2.d.(1) and E.2.d.(1)(b).

129.   Warren Canyon and Lake Poway are city-designated ESAs.

---

[13] Again, rehabilitating streams and repairing (re-establishing) wetlands are the types of controls contemplated by the 2013 MS4 Permit to "reduce" flows and retain pollutants in those flows before they reach the City's MS4.

130.   The City is also required to investigate and prioritize situations in which non-storm water contains "[p]ollutants identified as causing or contributing to an exceedance of a NAL" in receiving waters. 2013 MS4 Permit, Provision E.2.d.(1)(d); see 2013 MS4 Permit, Provision C.

131.   Under Provision E.2.d.(2), the City is also required to respond to a citizen's reports of non-storm water flows containing pollutants within Warren Canyon and the resulting polluted non-storm water discharges into Lake Poway with its own investigation and must maintain records of the discharges and their sources.

132.   Under Provision E.2.d.(3), those spring water discharges that are in exceedance of NALs must either be addressed through its Enforcement Response Plan or the category must be addressed according to Provision E.2.a.(6).

133.   Under Provision E.2.c., the City of Poway must conduct field screening of portions of its MS4 containing non-storm water in accordance with the dry weather monitoring requirements of Provision D.

134.   Finally, under Provision E.2.d.(4), each Copermittee must submit a summary of all detected non-storm water discharges with each WQIP annual report required by Provision F.

135.   The pollutants present in the spring water from Kelly Spring and from Rock Haven Spring, including the assimilated sediment pollutants from unpermitted culvert crossings and unpermitted wetlands damage in Warren Canyon from tractors (anthropogenically influenced sources), have been added to Lake Poway

34

through a point source (including at Warren Crossing and through Fisherman's Footbridge located at 33.0039 Latitude, -117.007 Longitude) and have aggravated a condition of eutrophication pollution and waste blockage pollution in the reservoir.

136.   Even if no one from the City has never explicitly identified the spring water as a source of pollutants through its MS4 in Warren Canyon, the 2013 MS4 Permit still requires the City to reduce or eliminate non-storm water discharges such as water from springs to the MS4, where feasible and when priorities and resources allow,[14] unless the City obtains a separate NPDES permit for the non-storm water discharges. 2013 MS4 Permit, Provision E.2.a.(7).

137.   In other words, there is no requirement in Provision E.2.a.(7) of the 2013 MS4 Permit that the City or the San Diego Water Board specifically identify the spring water as "a source of pollutants to receiving waters;" if a citizen can prove that the City has failed to implement the various requirements of Provision E.2.d of its 2013 MS4 Permit that would have uncovered the pollutants in the spring water or has failed to respond to valid reports of non-storm water containing

---

[14] The Ninth Circuit has held that the terms of an NPDES permit, where ambiguous on its face, raises issues of fact. Northwest Environmental Advocates v. City of Portland, 56 F.3d 979, 982 (9th Cir. 1995).

pollutants through its MS4, he can in turn seek the enforcement of Provision E.2.a.(7) through a citizen enforcement action.[15]

138.   The spring water with assimilated pollutants can feasibly be reduced before it enters the City's MS4 through wetland repair projects in Warren Canyon; the City of Poway has the resources to put the plans into place; and the non-storm water discharges into Lake Poway must be addressed as a "priority" as that term is defined in the 2013 MS4 Permit, including Provisions E.2.d.

139.   Even though the City of Poway has not yet included the discharges from Warren Canyon into Lake Poway as an area of priority concern in its current WQIP, Poway would have identified the persistent dry weather flows in Warren Canyon – the non-storm spring water discharges – as a "source of pollutants to receiving waters" had it been adhering to the requirements of Provision E.2.d and other sections of the MS4 Permit.

140.   As Poway has not used the safe-harbor provision as outlined in Provision B.3.c with respect to its non-stormwater discharges of polluted sediment and spring water flows containing pollutants such as phosphorous, iron, nitrogen, and indicator bacteria that are aggravating a condition of pollution in receiving waters in the SDR watershed by submitting a WQIP that fulfills the specific

---

[15] See, e.g., Brown v. Superior Court, 37 Cal.3d 477, 484 (1984) ("A construction rendering statutory language surplusage 'is to be avoided.'"); People v. Sylvester, 58 Cal. App. 4th 1493, 1496 (1997) ("[E]ach word and phrase in the statute should be interpreted to 'give meaning to every word and phrase in the statute.'").

requirements of Provision B.3.c., Poway must implement Provisions A.4 and E.2 and properly address the discharges from Kelly Spring and Rock Haven Spring into its MS4. See Alaska Community Action on Toxics v. Aurora Energy Services LLC, 765 F.3d 1169 (9th Cir. 2014) (NPDES permit did not shield defendants from liability for non-stormwater discharges of coal into bay).

141.   Furthermore, Provision B.5 also requires the City to address the reports in the May 24, 2019 NOV and attached exhibits with updated water quality improvement plans and strategies specific to the Warren Canyon subwatershed. The City has failed to do so.

142.   Certified hydrogeologist John Peterson (California Certified Hydrogeologist #90), who was employed by the County of San Diego for over 20 years as its groundwater expert and CEQA regulatory manager, has conducted water quantity and water quality monitoring of Kelly Spring and Rock Haven Spring using EPA protocols to establish that Warren Creek is a seasonal, intermittent stream fed by persistent groundwater flows and to identify any pollutants from these water sources that are transported to receiving waters of the United States.

143.   John Peterson has conducted 24-hour dry weather monitoring of the spring water flows on April 13-14, 2019 to capture the varying flow rates from the springs and to obtain flow-weighted composite samples for water quality monitoring pursuant to the strictures of Provision D.2 of the MS4 Permit.

144.   John Peterson also conducted dry weather monitoring of the spring water flows into Lake Poway on June 4, 2019.

145.   The results have demonstrated that the water from Kelly Spring (N-Kelly) contains iron and phosphorous pollutants that exceed the NALs established in the City of Poway's JRMP, the 2013 MS4 Permit, and the San Diego Basin Plan on April 13-14, 2019 and on June 4, 2019.

146.   The results also demonstrated that the water from Rock Haven Spring (S-Rock) contains total nitrogen and total phosphorous pollutants that exceed the NALs established by the City of Poway's JRMP, 2013 MS4 Permit, and the San Diego Basin Plan on April 13-14, 2019.

147.   24-hour water quality monitoring was also conducted in the receiving waters of the United States at Warren Crossing (the City of Poway's MS4) in the damaged wetland waters that are directly adjacent to Lake Poway on April 14-15, 2019 according to the strictures of Provision D.1.

148.   The analysis of the flow-weighted composite sample at Warren Crossing has showed that the pollutants from Rock Haven Spring and from Kelly Spring reach the receiving waters of the United States as exceedances of phosphorous NALs are exhibited there as well.

149.   The overall ratio of total nitrogen to total phosphorous (TN : TP) in the discharges is much lower than permitted, allowing harmful cyanobacteria to

flourish and a condition of eutrophication to persist in Lake Poway, including on April 14-15, 2019 and in the spring of 2019.

150.   Water quality monitoring conducted on March 18, 2019, March 21, 2019, March 28, 2019, April 2, 2019, April 10, 2019, May 4-5, 2019 (dry weather monitoring during the dry season) and June 4, 2019 (dry weather monitoring during the dry season) also confirm that phosphorous levels exceeding NALs from Kelly Spring flow through Warren Crossing and Fisherman's Footbridge and enter Lake Poway on a persistent basis during the winter and spring months when stream waters flow through Warren Canyon during typical non-drought years.

151.   Furthermore, the results from the toxicity tests confirm that the nutrient-rich spring waters contribute to the overabundance of algae as compared to the controls in the studies (both the controls and the samples were supplied with nutrients during the experiments; the additional nutrients present in the spring water samples taken on April 15, 2019 and May 5, 2019 resulted in the samples performing better than the controls).

152.   Although the subwatershed containing Rock Haven Spring is approximately the same size as the subwatershed area containing Kelly Spring, water flow from Rock Haven Spring occurred over a shorter period of time during the 2019 season, from February 14, 2019 to May 31, 2019, as compared to Kelly Spring.

Water from Kelly Spring started flowing on February 5, 2019 and continued to flow through July 15, 2019 and into Lake Poway during that time frame.

153.    To remedy the situation and to the improve the water quality of downstream waters including at Warren Crossing and at Lake Poway, surface water expert Tory Walker, P.E. has proposed the wetlands repair projects as described in the May 24, 2019 NOV, Exhibit 7, to address the spring water flows through Warren Canyon by reducing those flows and retaining more of the phosphorous and other pollutants in those flows within engineered wetlands <u>before</u> they enter the City's MS4 at Warren Crossing and into Lake Poway.

154.    The City has failed to monitor receiving waters in Warren Canyon as required by Provision D.1 in 2017 and 2019.

155.    The City has failed to identify and map out the public and private outfalls and other portions of the MS4 above Lake Poway as required under Provision D.2.a.(1).[16]

156.    The City has failed to monitor the non-storm water discharges into Lake Poway as required by Provisions D.2.a.(2) and D.2.b. in 2017 and 2019.

157.    The City has failed to fulfill the illicit discharge detection, elimination, and reporting requirements of Provision E.2 and Provision F with regard to the

---

[16] Private and public outfalls in Warren Canyon can be found at the following locations: 32.998, -116.9768; 32.998, -116.978; 32.9987, -116.9806; 33.0012, -117.0029; and 33.0030, -117.0057.

washed-out stream crossings as described above and the non-storm water that is a source of pollutants as described above in 2017, 2018, and/or 2019.

158.     The City has failed to identify all portions of its MS4 including the cross-draining culverts along unpaved roads,[17] culverts located in WOTUS,[18] and the Fisherman's Footbridge located in the mouth of Warren Creek at Lake Poway in 2017, 2018, and/or 2019.

159.   The City has failed to obtain the proper CWA permits and failed to adhere to various requirements of its 2013 MS4 Permit when it undertook a development project constructed in the waters of Lake Poway: the 2017 boat dock replacement project commenced in the winter of 2017 and finished in the fall of 2017.

160.   The new boat dock was constructed adjacent to the existing dock which remained in service until the new dock was completed. The City Council accepted the new boat dock as completed on November 21, 2017.

161.   The City of Poway failed to adhere to various requirements of its 2013 MS4 Permit and failed to obtain valid authorizations from the Department of the Army (DA) and the San Diego Water Board when it undertook a development

---

[17] Cross-draining culverts can be found along the hiking trails above Lake Poway including at the following locations: 33.003, -117.008; 33.004, -117.009; and 33.0047, -117.0110.

[18] MS4 culverts placed in WOTUS include the following locations: 33.0030, -117.0057 and 33.0062, -117.0052.

project constructed by Bellingham Marine Industries, Inc. within Lake Poway. The City failed to obtain a valid CWA § 404 permit as well as a valid water quality certification under CWA § 401 for the boat dock because the City has incorrectly labeled Warren Creek, which drains directly into Lake Poway, as an ephemeral tributary,[19] when in fact it is an intermittent stream, thus making Lake Poway "Waters of the United States" under longstanding EPA policy.

162.   The City, in violation of Provision E.3.a.(3) n.25 of the 2013 MS4 Permit and CWA §§ 401[20] and 404,[21] has failed to obtain any authorization whatsoever for the boat dock and associated anchorage installed within jurisdictional waters. Poway is in violation of the Clean Water Act for failing to obtain the proper permits, including the appropriate amount of compensatory mitigation, for its boat dock and all other structures that were built/replaced in the Lake Poway area in 2017.[22] (Cf. May 24, 2019 NOV, Exhibit 10.) The City of Poway is liable for statutory penalties up to the statutory maximum each and every day from November 21, 2017 when Poway's City Council finalized the project up through the present day because the boat dock remains in use and is unpermitted and illegal under CWA law.

---

[19] As of September 12, 2019, the Clean Water Rule of 2015, which designated ephemeral streams as Waters of the United States, has been officially repealed by the EPA and the Department of the Army.

[20] 33 U.S.C. § 1341.

[21] 33 U.S.C. § 1344.

[22] Poway never has obtained any CWA permits for its boat dock in the past 50 years.

163.   Based upon Plaintiff's investigation to date, Plaintiff alleges that Defendant is responsible for more than 670 individual violations of the Clean Water Act for the work done in 2017 at the boat dock in Lake Poway. Defendants' acts and omissions have harmed, and continue to harm, Kevin T. Kelly, who is in the process of establishing a mitigation bank in Warren Canyon that will positively affect the water quality of Warren Crossing and Lake Poway because Poway has not been adhering to the Clean Water Act and its requirements to obtain compensatory mitigation credits required for after-the-fact Department of the Army and San Diego Water Board permits.

164.   The area affected by the reduced reservoir levels in 2017 and 2019 resulting from the City's discharges totals more than one acre.

165.   Poway's drawdown of the amount of water in Lake Poway in 2017 and 2019 has also reduced the amount of wetlands in Warren Canyon.

166.   Plaintiff seeks declaratory and injunctive relief, as well as civil penalties, to end the unlawful acts and omissions of Defendant that continue to cause degradation to water quality. Plaintiff also seeks recovery of reasonable costs of suit, including attorney, witness, expert, and consultant fees, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d).

167.   Plaintiff seeks injunctive relief, remedial relief, declaratory relief, and civil penalties for each day of each violation for each U.S. water body over the past five years relating to the illegal discharges, all violations of Section 301 of the

Clean Water Act, and all violations of the City's 2013 MS4 Permit which have occurred in 2017 and 2019, plus costs, attorney and expert witness fees, and such other relief as may be appropriate.

168.   Plaintiff seeks the applicable statutory maximum for each violation, presently $54,833 per day for each violation occurring after November 2, 2015. 33 U.S.C. §1319(d) and 40 C.F.R. §19 and §19.4 Table 1 (or as otherwise provided by federal regulations).

169.   Civil penalties are mandatory once violations are found by a federal judge or jury.  33 U.S.C. §1319(c); Leslie Salt Co. v. United States, 55 F.3d 1388, 1396 (9th Cir. 1995) (civil penalties under Clean Water Act are mandatory, not discretionary).

## V.   CAUSES OF ACTION

### A. Discharges from the City of Poway's MS4s Causing, Contributing to, and Threatening to Cause Pollution in receiving waters in Violation of the 2013 MS4 Permit and CWA Sections 301(a) and 402(p), 33 U.S.C. §§ 1311(a) and 1342(p).

170.   Plaintiff incorporates by reference each and every allegation contained above, as though set forth fully herein.

171.   The City's NPDES Permit prohibits discharges that cause or contribute to or threatened to cause a condition of pollution, contamination, or nuisance in receiving waters.

172.   The City of Poway has acknowledged in the public record that sediment pollution from the storms of 2017 have lessened the water storage capacity of Lake Poway and have blocked the natural course of the main tributary feeding the reservoir.

173.   The City ordered a bathymetric survey of the bottom surface of Lake Poway after it "became apparent with the repair work from the 2017 winter storm events." City of Poway, Agenda Item 1.12, pg. 3, November 7, 2017.

174.   These admissions demonstrate that exceedances of water quality standards in Warren Canyon and Lake Poway have occurred since early 2017.

175.   Lake Poway is being affected by waste to the extent that the reservoir is regularly losing its storage capacity, even more dramatically as shown after the February 14, 2019 winter storms, and recreational activities such as fishing are being impaired because of deleterious deposits removing fishing spots and causing turbidity, eutrophication, and coloration of the waters from iron, nitrogen, and phosphorous-rich water and sediment. The effects of these discharges are the overabundance of harmful cyanobacteria and other algal blooms occurring in Lake Poway, the closure of certain portions of Lake Poway including at Hidden Bay due to swamp-like conditions, the use of toxic copper-based algaecides, and the forced reduction of the water levels and the reduced storage capacity of Lake Poway in part due to the waste blockage and resulting effects.

176.   Since 1972, over 20,000 tons of dirt and course sediment have buried the Boulder Bay area of Lake Poway and infiltrated the reservoir along the path of the historical stream within the reservoir, according to Poway's bathymetric survey of 2018.

177.   In 2017 and again in 2019, enough course sediment waste entered the Boulder Bay portion of Lake Poway to bury most of its wooden footbridge that only a few years ago was floating above water.

178.   The San Diego Water Board Basin Plan prohibits the following "waste" discharges: 1) Discharge of pollutants or dredged or fill material to waters of the United States except as authorized by a NPDES permit or a dredged or fill material permit; 2) Discharge of waste to inland surface waters in a manner causing a condition of pollution; 3) Discharge of waste in a manner causing flow, ponding, or surfacing on lands not owned or under the control of the discharger; 4) The dumping, deposition, or discharge of waste directly into waters of the state or adjacent to such waters in any manner which may permit its being transported into the waters; 5) Discharge of waste into a natural or excavated site below historic water levels; and 6)  Discharge of sand, silt, clay or other earthen materials from any activity, including land grading and construction, in quantities which cause deleterious bottom deposits, turbidity or discoloration in waters of the state or which unreasonably affect or threaten to affect beneficial uses of such waters. 2013 MS4 Permit, A-1–A-2.

179.    In the City of Poway, anthropogenic sources of pollutants—namely

unpermitted discharges of dredged and fill materials placed around culverts and

other conveyances by the City and by private third parties in Warren Canyon–

have become mobilized and discharged into the mouth and other portions of

Warren Creek and into Lake Poway as an unreasonable amount of waste from

and through Poway's point sources in violation of its 2013 MS4 Permit. The

approximate location of the washed-out, unpermitted point sources as a result of

the February 2017 and February 2019 winter storms (February 27, 2017 and

February 14, 2019 more specifically) in Warren Canyon are as follows:

a. 33.001298, -117.003004 (APN: 278-290-1100);

n. 32.998925, -116.998575 (APN: 278-300-5000);

o. 32.998802, -116.997127 (APN: 278-300-5900);

p. 33.001296, -117.003004 (APN: 278-290-0600);

q. 32.9990, -116.9961 (APN: 278-200-1900);

r. 32.9992, -116.9934 and 32.9993, -116.9927 (APN: 278-200-0700);

s. 32.998671, -116.981069 (APN: 278-200-0200);

t. 32.998204, -116.977989 (APN: 278-210-1500);

u. 32.9980, -116.9761 (APN: 278-210-1800);

v. 32.9990, -116.9756 (APN: 278-210-1800);

w. 32.998103, -116.976631 (APN: 278-210-1600);

x. 32.9992, -117.0003 (APN: 278-300-6000); and

y.  33.0030, -117.0057 (APN: 278-280-2300).

180.   Poway's discharges (including the discharges of third parties within and under its jurisdiction) that are causing a condition of pollution in Lake Poway are inherently in violation of the waste discharge prohibitions incorporated in the San Diego Water Board's Basin Plan in violation of Provision A.1.c. These MS4 discharges have contributed to a violation of water quality standards, including those in the Basin Plan. 2013 Permit, Provision A.2.a.; Id. at A.2.a.(1).

181.   The discharges from City staff and from third parties in Warren Canyon include both nonpoint source pollution and point-source pollution that is all funneled through a point source MS4 (e.g. Warren Crossing and Fisherman's Footbridge) and into the receiving waters of Warren Creek and Lake Poway.

182.   The MS4 Permit also prohibits MS4 discharges from causing or contributing to a violation of water quality standards, including those in the Basin Plan. 2013 Permit, Provision A.2.a.; Id. at A.2.a.(1).

183.    Septic tanks are located in proximity to several of the aforementioned point sources in Warren Canyon. At least one of these septic tanks failed in 2019 and contributed some of the nutrient and bacterial pollution at Warren Crossing and into Lake Poway.

184.   These unpermitted discharges have caused and are causing a condition of pollution in Lake Poway. The man-made conveyances in Warren Canyon mentioned were mostly washed out on (or around) February 27, 2017 and again

on (or around) February 14, 2019.

185. City-owned parcels containing the City's point sources that discharge pollutants into Lake Poway include the following: APN: 278-290-1000; APN 278-280-2300; APN 278-281-0100; and APN: 278-210-1100.

186. The City of Poway also contains at least two significant springs (Rock Haven Spring and Kelly Spring) that discharge into private, manmade point sources and eventually into the City's MS4 in an anthropogenically influenced state because of unpermitted fill materials and mobile pollutants placed in Warren Creek due to the actions of private property owners as well as City staff. The mobile pollutants are picked up by the flowing spring waters, which also contain their own sources of pollutants, before being discharged into Lake Poway.

187. The City of Poway must comply with the discharge prohibitions in its 2013 MS4 Permit, Provision A.1.a at a minimum because the polluted water contained a large amount of non-storm spring water that is traceable to Rock Haven Spring and to the seasonal springs on Mount Woodson including Kelly Spring.

188. In the winter and spring of 2017, the seasonal springs on Mount Woodson continually fed Lake Poway from February 27, 2017 through at least April 17, 2017.

189. In the winter, spring, and summer of 2019, Kelly Spring continually fed Lake Poway from February 5, 2019 to at least July 15, 2019.

190.   As a result of its control of land areas that are generating polluted stormwater and non-stormwater, the City of Poway has caused and contributed to, and is causing, contributing to, and threatening to cause, pollution in the wetlands of Warren Canyon and in Lake Poway, which are all considered waters of the United States.

191.   Between February 27, 2017 and April 17, 2017, each day that the City of Poway has caused, contributed to, threatened to cause, or failed to mitigate polluted stormwater and non-storm water flows through its MS4 is a separate and distinct violation of the 2013 MS4 Permit and 33 U.S.C. §§ 1311(a) and 1342(p).

192.   Between February 5, 2019 and June 5, 2019, each day that the City of Poway has caused, contributed to, threatened to cause, or failed to knowingly mitigate polluted stormwater and non-storm water flows through its MS4 is a separate and distinct violation of the 2013 MS4 Permit and 33 U.S.C. §§ 1311(a) and 1342(p).

193.   The violations of the 2013 MS4 Permit's discharge prohibitions continue to this day because the polluted sediment has not been removed, which has lessened the reservoir's storage capacity. The polluted sediment and non-storm water containing phosphorous and nitrates is also threatening to cause eutrophication in the Boulder Bay area of Lake Poway in the future.

194.   During major rain events including during the winter and springs months of 2019, stormwater water flows freely over exposed materials of the stream crossings and sediment buildup, becoming contaminated with bacteria, color, manganese, mercury, nitrogen, pH, phosphorus, viruses, turbidity, and nutrients at levels above applicable water quality standards for several of these constituents, causing and/or threatening to cause a condition of pollution in the reservoir. The polluted water containing both nonpoint source pollution and point-source pollution then flows untreated and unfiltered into Lake Poway through a point-source MS4.

195.   For weeks and months in a typical year, non-storm spring water flows freely over exposed materials of the stream crossings and sediment buildup, becoming contaminated with bacteria, color, manganese, mercury, nitrogen, pH, phosphorus, viruses, turbidity, and nutrients at levels above applicable water quality standards for several of these constituents, causing and/or threatening to cause a condition of pollution in the reservoir. The contaminated non-storm water then flows untreated into the City's MS4 and into Lake Poway.

196.   Minimizing non-storm water flows through wetland repair projects would lessen the amount of pollutants in the non-storm water through biological uptake.

197.   These violations are ongoing and continuous in light of the City of Poway's history of failing to abide by and enforce the Clean Water Act and its 2013 MS4 Permit in the area above and including Lake Poway.

198.   The Basin Plan states that "waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses." The beneficial uses of Lake Poway are being lost by the City of Poway's actions and inactions.

199.   The Regional Board's Basin Plan establishes a number of water quality standards for inland surface waters and coastal waters in the San Dieguito River watershed, all incorporated by reference into the 2013 MS4 Permit. The MS4 Permits prohibit discharges that cause or contribute to exceedances of these water quality standards.

200.   The City has caused and contributed to, and continues to cause and contribute to, exceedances of water quality standards in Warren Canyon and in Lake Poway.

201.   As a result of its control of land areas that generate polluted storm water and non-storm water, the City has caused and contributed to, and is causing and contributing to, exceedances of water quality standards in Warren Canyon and in Lake Poway.

202.   These violations are ongoing and continuous because the City's Warren Crossing has not been engineered to sit below the water table and to withstand storm surges and will eventually blow out into Lake Poway and its adjacent wetlands during the next series of 50-year winter storm events.

203.   The City has not put into place best management practices and effective controls that will reduce pollutants in storm water discharges and non-storm

water discharges from its MS4 above Lake Poway to the maximum extent practicable.

204.   In 2017, 2018, and 2019, the City has not properly addressed the non-storm water discharges from its MS4 above Lake Poway which are aggravating a condition of pollution in Lake Poway.

205.   These violations are ongoing and continuous because the City of Poway has not fully enforced the law against private property owners in Warren Canyon who have their own unpermitted discharges of dredge and fill materials in Warren Creek, including maintained, tractor-disturbed crossings in 2017, 2018, and/or 2019.

206.   The City of Poway will continue to violate the Clean Water Act in the future unless and until the City is instructed by a federal district judge that the Clean Water Act is applicable to Lake Poway and its watershed area.

207.   The City of Poway will continue to violate the Clean Water Act in the future unless and until the City is instructed by a federal district judge to dredge the Boulder Bay area of Lake Poway, remove the waste pollution deposited there, and restore the stream and wetlands there.

208.   The City of Poway will continue to violate the Clean Water Act in the future unless and until the City is instructed by a federal district judge to dredge the Warren Crossing area, remove the waste pollution deposited there, and restore and re-establish the wetlands there.

209.  The City of Poway will continue to violate the Clean Water Act in the future unless and until the City is instructed by a federal district judge to commence enforcement actions under the Clean Water Act against those in Warren Canyon who have maintained illegal stream crossings over Warren Creek without the proper permits.

210.  Unless the City of Poway desists in its violations of the 2013 MS4 Permit and Sections 301(a) and 402(p) of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), Plaintiff will suffer irreparable harm.

211.  From February 27, 2017 to the present, each day that the City has caused, contributed to, or failed to prohibit exceedances of water quality standards by allowing unpermitted waste to remain and accumulate in Warren Canyon and Lake Poway is a separate and distinct violation of the applicable 2013 MS4 Permit and 33 U.S.C. §§ 1311(a) and 1342(p).

212.  These violations are ongoing and continuous. In light of the City's history of violations and the nature of the violations, the City will continue to violate these requirements in the future unless and until enjoined from doing so.

213.  By committing the acts and omissions alleged above, Defendant City is subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a). See 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4 (February 6, 2019).

214.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Defendant must be subjected to an injunction ordering them to cease activities in violation of the Clean Water Act.

215.   Allowing the commission of the acts and omissions alleged above to continue will irreparably harm Plaintiff, for which he has no adequate remedy at law.

216.   Plaintiff prays for judgment against Defendant City as set forth below.

   **B.  <u>Non-Storm Water Discharges into and/or from the City's MS4 Without the Use of Effective Controls to Reduce and Minimize the Discharges and/or the Lack of a Separate NPDES Permit in Violation of the 2013 MS4 Permit and CWA Sections 301(a) and 402(p), 33 U.S.C. §§ 1311(a) and 1342(p).</u>**

217.   Plaintiff incorporates by reference each and every allegation contained above, as though set forth fully herein.

218.   Discharges of non-storm spring water from Rock Haven and from Mount Woodson, which are themselves sources of pollutants, into the City of Poway's MS4 and into Lake Poway have aggravated a condition of pollution and the loss of the beneficial uses of Lake Poway each and every day from February 27, 2017 to April 17, 2017 and from February 5, 2019 to June 5, 2019, which are each separate and distinct violations of the City's 2013 MS4 Permit as stated in Cause of Action A.

219.   More than 90% of the time when the stream flow through Warren Crossing

consisted of dry-weather, non-storm spring water between the months of April, May and June 2019, the permitted MS4 contribution of phosphorous into Warren Creek and into Lake Poway (0.1 mg/L maximum daily action level (MDAL) non-storm water action level (NAL)) has been exceeded, oftentimes at levels double the amount allowable under the City's MS4 Permit, Poway's Jurisdictional Runoff Management Plan (JRMP), and the San Diego's Basin Plan.

220.   From February 16, 2019 to March 28, 2019, the permitted MS4 contribution of iron into Warren Crossing and into Lake Poway from non-storm water discharges (0.3 mg/L maximum daily action level non-storm action level (NAL)) was exceeded more than 50% of the time.

221.   Total Nitrogen levels of discharges from Warren Crossing into Lake Poway exceeded the NAL as adopted in Poway's JRMP periodically and on at least two occasions between February 5, 2019 and June 5, 2019.

222.   Exceeding a NAL as established in the Basin Plan, the 2013 MS4 Permit, and Poway's JRMP is evidence that non-storm water has been anthropogenically influenced.

223.   One of the main sources of soluble phosphorous into the City of Poway's MS4 is from Kelly Spring, located at 32.9998 Latitude, -116.9749 Longitude, which is under the City of Poway's jurisdiction and on Plaintiff's property. The ecosystem surrounding Kelly Spring has been anthropogenically influenced over

the past 50 years including as recently as 2016 through the use of culverts and tractors and wetland vegetation removal.

224. Total Phosphorus levels from discharges from Kelly Spring exceeded the NAL more than 90% of the time between April 1, 2019 and June 5, 2019.

225. The violations continue on days when the spring water flows through the polluted sediment in the Boulder Bay area of Lake Poway and into the receiving waters of Lake Poway.

226. The Maximum Extent Practicable (MEP) standard does not apply to non-storm water discharges into the MS4 and/or receiving waters. The standard to be applied to non-storm water discharges is much stricter.

227. Non-storm water discharges must be addressed by the City of Poway, and Poway's proposals for the minimization of spring water discharges must be approved by the Department of the Army and the San Diego Water Board. The City of Poway has failed to properly address the non-storm spring water discharges into Lake Poway in 2017, 2018, and 2019 according to discharge Prohibition Provision A.1.b of the 2013 MS4 Permit; see also 33 U.S.C. § 1311(a).

228. The City of Poway has not effectively prohibited the non-stormwater discharges coming from springs into its MS4 in the watershed area above Lake Poway.

229.   Unless the City desists in its violations of the 2013 MS4 Permit, 33 U.S.C. §§ 1311(a) and 1342(p), or obtains a separate NPDES permit for non-storm water discharges of polluted spring water, Plaintiff and the public will suffer irreparable harm.

230.   The City of Poway has not effectively enforced the Clean Water Act, state law, and the 2013 MS4 Permit in the streams feeding Lake Poway with regard to its own projects in waters of the state and has not effectively enforced the Clean Water Act, state law, and the 2013 MS4 Permit as to the discharges of fill and dredged materials in Warren Creek on private property upstream of Lake Poway.

231.   The City has been presented with a feasible plan to reduce the non-storm water discharges into its MS4 through wetland repair projects on APN: 278-210-1800 that will reduce non-storm water spring flows into the City's MS4 and into Lake Poway.

232.   The City's 2013 MS4 permit requires that the spring water emanating from Mount Woodson and Rock Haven be addressed as a priority concern because of the traceable pollution that has resulted in Lake Poway in 2017 and in 2019 and because Warren Canyon and Lake Poway have been designated as ESAs.

233.   The City of Poway has the resources to purchase APN: 278-210-1800 for its ecological and water resource values and to construct the rock weirs that will control and reduce storm and non-storm water flows before they enter Lake Poway.

234.   The City of Poway has not come up with an alternative <u>effective</u> and <u>feasible</u> plan approved by the San Diego Water Board, along with compensatory mitigation for the engineered structures, to segregate the non-storm water spring water discharges <u>into</u> its MS4 before they are discharged onto private property and into Lake Poway.

235.   The City of Poway has no intention of obtaining separate NPDES permits for the spring water flows from Mount Woodson and from Rock Haven.

236.   By committing the acts and omissions alleged above, the City is subject to an assessment of civil penalties for each and every violation of the Clean Water Act occurring from February 27, 2017 to the present. <u>See</u> 33 U.S.C. §§ 1319(d), 1365; and 40 C.F.R. § 19.4 (February 6, 2019).

237.   An action for injunctive relief is authorized by Clean Water Act Section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff.

238.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

239.   Plaintiff has no adequate remedy at law.

240.   Plaintiff prays for judgment against Defendant City as set forth below.

**C. <u>Failing to Report and Monitor Wet and Dry Weather Discharges and Identify Non-Storm Water Discharges in Violation of the 2013 MS4</u>**

59

## Permit and Sections 301(a) and 402(p) of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p)

241. Plaintiff realleges, as set forth fully herein, each and every allegation contained in the preceding paragraphs.

242. The City of Poway is required to conduct wet and dry weather monitoring of the natural runoff including non-storm water flows coming into Lake Poway, and it has failed to do so in 2017, 2018, and/or 2019.

243. The City of Poway is required to identify the storm sewer conveyance immediately upstream of Lake Poway and to conduct wet and dry weather monitoring at this location on a regular basis. It has failed to do so.

244. The City of Poway is required to identify non-storm water discharges coming from its MS4. The City of Poway has not properly identified and monitored the flows of Rock Haven Spring and Kelly Spring which are sources of non-storm water pollutants in its MS4 and into Lake Poway.

245. The City of Poway is required to monitor the water quality of the non-storm water discharges coming from its MS4 and into Lake Poway. It has failed to do so in a timely fashion in 2019.

246. The City is required to report its illegal discharges and update the Water Quality Improvement Plan and identify water quality improvement strategies such as stream rehabilitation projects that will be implemented to reduce or

eliminate any pollutants or conditions that are causing or contributing to the exceedance of water quality standards.

247.   Because contaminated non-storm spring water has been discharged into the City's MS4, the City of Poway is required to report it to the San Diego Water Board. It has failed to do so in a timely fashion in 2017, 2019, and/or 2019.

248.   The City has violated and continues to violate the 2013 MS4 Permit, Sections 301(a) and 402(p) of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), by failing to update its Water Quality Improvement Plan and identify water quality improvement strategies such as stream rehabilitation projects in the subwatershed area above Lake Poway that will be implemented to reduce or eliminate any pollutants or conditions that are causing or contributing to the exceedance of water quality standards from storm and non-storm water, including those in the Basin Plan.

249.   The City has violated and continues to violate the 2013 MS4 Permit by failing to submit an adequate Waste Discharge Report, which is required for NPDES Permit renewal, and by failing to submit an adequate Water Quality Improvement Plan Annual Report documenting all discharges from the MS4 that have caused or contributed to exceedances of water quality standards in 2017, 2018, and/or 2019.

250.   These violations are ongoing and continuous. In light of the City's history of violations and the nature of violations, the City will continue to violate these

requirements to monitor and report discharges in the future unless and until enjoined from doing so.

251. Unless the City desists in its violations of the 2013 MS4 Permit, 33 U.S.C. §§ 1311(a) and 1342(p), Plaintiff and the public will suffer irreparable harm.

252. Plaintiff has no adequate remedy at law.

253. Plaintiff prays for judgment against Defendant City as set forth below.

## D. **Failing to Reduce Pollutants in Storm Water Discharges from MS4s to the MEP in Violation of the 2013 MS4 Permit and Sections 301(a) and 402(p) of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p)**

254. Plaintiff incorporates by reference each and every allegation contained above, as though set forth fully herein.

255. The City of Poway's parcels containing its point sources that discharge pollutants into and from its MS4 to receiving waters include the following: APN 278-280-2300; APN 278-281-0100; and APN: 278-210-1100.

256. Cross-draining culverts can be found along the hiking trails above Lake Poway including at the following locations: 33.003, -117.008; 33.004, -117.009; and 33.0047, -117.0110.

257. MS4 culverts placed in WOTUS include the following locations: 33.0030, -117.0057 and 33.0062, -117.0052.

258.   Although the City controls land areas that are generating polluted stormwater and non-stormwater, the City of Poway has failed to reduce pollutants in storm water to its MS4 and from its MS4 to the maximum extent practicable.

259.   Poway failed to engage in best management practices by installing and maintaining BMPs in its MS4 to limit the amount of stormwater pollution from entering Lake Poway on February 27-28, 2017 and on February 14-15, 2019.

260.   The City of Poway has failed to clean out its culverts within streams above Lake Poway and its cross-draining culverts along its hiking trails above Lake Poway before the 2017, 2018, and 2019 storm seasons to lessen pollution from its MS4 and into Lake Poway during the rainy season as required by Poway's JRMP.

261.   The City of Poway failed to engage in best management practices to reduce pollutants in storm water discharges from the City's MS4 to the maximum extent practicable with its construction projects completed in 2017.

262.   The Warren Crossing installed by the City of Poway using dirt backfill would not reduce pollutants from its MS4 and into Lake Poway to the maximum extent practicable.

263.   To reduce pollutants in storm water discharges at the location of the Warren Crossing to the maximum extent practicable, the City of Poway should have installed a bridge with abutments instead of a culvert which will not withstand storm surges of an expected 50-year storm event.

264.   The City of Poway has not installed sufficient BMPs in the vicinity of the Warren Crossing in the Lake Poway area in 2017, 2018, and 2019 to fully protect its downstream water supply to the maximum extent practicable.

265.   The Piperin Crossing project, located at Latitude 33.0046, Longitude -117.0100,  also was constructed without the proper BMPs/source controls/ and/or LID BMPs to reduce pollutants in storm water from the City's MS4 during the 2018 and 2019 seasons to the maximum extent practicable (e.g. by placing filtering rocks and cloth filters within and over the culvert).

266.   "Waste and pollutants which are deposited and accumulate in MS4 drainage structures will be discharged from these structures to waters of the U.S. unless they are removed.  These discharges may cause or contribute to, or threaten to cause or contribute to, a condition of pollution in receiving waters." 2013 MS4 Permit, Finding 16. As the polluted waste sediment deposited in the City's MS4 contains excess phosphorous and other nutrients, the City is required to reduce the polluted discharges of storm water from Warren Creek and the Boulder Bay area of Lake Poway and into the drinking water reservoir to the MEP by dredging out the excess waste sediment coming from unpermitted stream crossings in Warren Canyon that have been deposited in Warren Creek at Warren Crossing and at its mouth in Boulder Bay.

267.   These violations are ongoing and continuous. The City of Poway will continue to violate the Clean Water Act in the future unless and until it is enjoined from doing so.

268.   Unless the City of Poway desists in its violations of the 2013 MS4 Permit and Sections 301(a) and 402(p) of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), Plaintiff and the public will suffer irreparable harm.

269.   Plaintiff has no adequate remedy at law.

270.   Plaintiff prays for judgment against Defendant City as set forth below.

## E.   **Dredging and Filling Waters of the United States in Violation of Section 301, 401, and 404 of the Clean Water Act, 33 U.S.C. §§ 1311, 1341, 1344.**

271.   Plaintiff re-alleges and incorporates herein by this reference the preceding paragraphs of this Complaint.

272.   Warren Creek and Lake Poway are all Waters of the United States as defined in the Clean Water Act, longstanding EPA policy since the 1980s, the EPA's Rapanos Rule of 2008, and the Trump Administration's proposed WOTUS rules.

273.   Warren Creek is Waters of the United States under both Justice Scalia's Rapanos plurality decision (because of the adjacent wetlands that are contiguous with the surface waters of Lake Poway), under the Rapanos Rule of 2008 (because it is seasonal stream and because it has a significant nexus to a navigable water), under pre-2015 EPA regulations promulgated in the 1980s

(because it is a seasonal intermittent stream), and under the Trump Administration proposed WOTUS rules of February 2019.

274.   Lake Poway is Waters of the United States under Justice Scalia's <u>Rapanos</u> decision, under the Rapanos Rule of 2008, and under pre-2015 EPA regulations promulgated in the 1980s because Lake Poway is navigable-in-fact Wate<u>r</u>s of the United States.

275.   Lake Poway and Warren Creek are WOTUS under the Trump Administration's proposed WOTUS rules because of the natural springs feeding Warren Creek and Lake Poway on an intermittent, seasonal basis for months of a typical year.

276.   In the replacing its boat dock at Lake Poway, the City of Poway dredged the lake bottom, filled wetlands with new concrete, and/or anchored the new dock without seeking or obtaining individualized Section 404 permits from the Army Corp of Engineers or individualized Section 401 certifications from the San Diego Water Board. This activity caused unauthorized discharges of dredged and fill materials into waters of the United States in violation of the Clean Water Act Sections 301, 401, and 404.

277.   The City of Poway does not have, has never had, and has never applied for an *individualized* Section 401 certification for its boat dock or other structures in Waters of the United States located in Lake Poway over the past 50 years.

278.  The City of Poway does not have, has never had, and has never applied for an *individualized* Section 404 permit for its boat dock in Waters of the United States located in Lake Poway over the last 50 years.

279.  The City of Poway failed to undertake ESA § 7 consultation with the wildlife agencies to ensure that its work in Waters of the United States conforms to its Habitat Conservation Plan.

280.  The City of Poway has undertaken unauthorized work in Waters of the United States as defined by the Clean Water Act and the permitting authorities in Lake Poway in 2017 at the location of its new boat dock.

281.  The Army Corp has asserted jurisdiction over all portions of the Warren Creek crossing in 2017.

282.  In 2019, the City of Poway, through the San Diego County Water Authority, undertook a jurisdictional delineation of Lake Poway in response to this lawsuit.

283.  The City of Poway's ongoing and threatened future discharges of dredge and fill material and other pollutants from its activities in the Lake Poway area and upstream watershed constitute violations of the Clean Water Act Section 301, 401, and 404, 33 U.S.C. § 1311, 1341, and 1344. The City of Poway has violated and continues to violate Sections 404 and 401 of the CWA. There is a reasonable likelihood that the City of Poway will conduct future dredge and fill operations in the Lake Poway area and upstream watershed without obtaining

individualized Section 404 permits from the Army Corps of Engineers or Section 401 certifications from the San Diego Water Board.

284.   Plaintiff has provided the City of Poway and other state and federal officials with a sixty-day notice of the Clean Water Act violations alleged in these pleadings, pursuant to the Clean Water Act's requirements and all applicable law. Clean Water Act § 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(A). More than 60 days have elapsed since Plaintiff provided notice to Defendant of the Clean Water Act violations alleged in these Pleadings and the violations remain unabated.

285.   Upon information and belief, neither the EPA nor the State has commenced and is diligently prosecuting an action for the Clean Water Act violations asserted in these Pleadings.

286.   Unless the City of Poway desists in its violations of the CWA, Plaintiff will suffer irreparable harm.

287.   Plaintiff has no adequate remedy at law.

**F.**   **Failing to Implement/Install BMPs including Onsite BMP Performance Requirements and/or LID BMPs as described in Provisions E.3.a. of the 2013 MS4 Permit for the City of Poway's Development Projects in 2017 in Violation of its 2013 MS4 Permit and Sections 301(a) and 402(p) of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p).**

288.   Plaintiff incorporates by reference each and every allegation contained above, as though set forth fully herein.

289.   The City of Poway has failed to prescribe effective onsite and structural BMPs to its development project at the boat dock replacement project during the planning and construction process so as to control pollutant discharges into Lake Poway.

290.   The City of Poway failed to install source control BMPs to prevent illicit discharges into the MS4 at the boat dock replacement project.

291.   The City of Poway failed to implement the restoration of the storage reservoir at the site of the boat dock and its replacement in 2017.

292.   The City of Poway's 2013 MS4 Permit required the City to implement low impact development (LID) BMPs or make specific findings as to why LID BMPs were not applicable or feasible for its boat dock replacement project of 2017. The City failed to do so.

293.   Had the City obtained the proper local permits (i.e. 401 certification and/or waste discharge requirements from the San Diego Water Board as required by the 2013 MS4 Permit, Provision E.3.a(3)(a).n.25) for the boat dock replacement project, the City would had been required to plan, document, and implement the aforementioned source control, onsite, and LID BMPs at the boat dock replacement project or explain to the San Diego Water Board why there were not necessary.

294.   These violations are ongoing and continuous. The City of Poway will continue to violate the Clean Water Act in the future unless and until it is enjoined from doing so.

295.   The BMPs, if any, that the City of Poway did prescribe for the boat dock replacement project do not fully fulfill the requirements of its 2013 MS4 Permit, Provision E.3.a.

296.   The City of San Diego has set the standard for implementing effective BMPs that reduce pollution to the MEP, and the City of Poway must emulate its sister city which is making genuine attempts at adhering to all provisions of its 2013 MS4 Permit.

297.   Unless the City of Poway desists in its violations of the 2013 MS4 Permit and Sections 301(a) and 402(p) of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), Plaintiff and the public will suffer irreparable harm.

298.   Plaintiff has no adequate remedy at law.

299.   Plaintiff prays for judgment against Defendant City as set forth below.

## VI.    REMEDIES

300.   WHEREFORE, Plaintiff requests this Court to enter a judgment:

a.   Declaring Lake Poway as Waters of the United States under 28 U.S.C. § 2201 because it was built over an intermittent, seasonal stream that would naturally drain to the Pacific Ocean and currently impounds WOTUS.

b.  Declaring that the Clean Water Act is enforceable as to Lake Poway and the subwatershed area above Lake Poway.

c.  Declaring that the 2013 MS4 Permit is enforceable as to Lake Poway and the subwatershed area above Lake Poway.

d.  Declaring the City of Poway to have violated and to be in violation of the 2013 MS4 Permit and Sections 301(a) and 402(p) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342(p), for discharges causing and contributing to or threatening to cause a condition of pollution in the receiving waters of the state and exceedances of water quality standards at Warren Crossing and at Lake Poway in 2017 and 2019.

e.  Declaring the City of Poway to have violated the 2013 MS4 Permit for not reducing pollutants in its MS4 to the maximum extent practicable through best management practices and other water quality improvement projects in 2017 and 2019. 33 U.S.C. § 1342(p).

f.  Declaring the City of Poway to have violated the 2013 MS4 Permit for not addressing the non-storm water spring water discharges into its MS4 and into Lake Poway.

g.  Declaring the City of Poway to have violated the 2013 MS4 Permit for not reducing the non-storm water spring water discharges containing pollutants into its MS4 and into Lake Poway.

h.  Declaring the City to have violated, and to be in violation of, its MS4 Permit and Sections 301(a) and 402(p) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342(p), for discharging non-storm water uncontrolled;

i.  Declaring the City to have violated, and to be in violation of, its MS4 Permit and Sections 301(a) and 402(p) of the Clean Water Act, 33 U.S.C. § 1311(a) and 1342(p), for allowing discharges causing and contributing to exceedances of water quality standards.

j.  Declaring the City of Poway to have violated the 2013 MS4 Permit for failing to obtain the proper state and/or federal permits for its construction activities in 2017 in the Lake Poway subwatershed area, including the boat dock replacement project;

k.  Declaring the City of Poway to have violated the 2013 MS4 Permit for not installing/maintaining controls and other Best Management Practices when constructing/maintaining its trail/access road repairs in the various tributaries above Lake Poway.

l.  Declaring the City of Poway to have violated and to be in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for engaging in dredge and fill activities without a valid permit upstream of Lake Poway.

m. Declaring the City of Poway to have violated and to be in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for engaging in dredge

and fill activities without a proper 401 Certification pursuant to the Act in various locations above Lake Poway and in Lake Poway in 2017.

n. Declaring the City of Poway to have violated and to be in violation of the 2013 MS4 Permit for failing to obtain Waste Discharge Requirements and/or water quality certification from the San Diego Water Board for its work in the Lake Poway area in 2017.

o. Enjoining the City of Poway from discharging or causing the discharge of dredged or fill materials or other pollutants into any waters of the United States or waters of the state except in compliance with a San Diego Water Board permit, a Department of the Army permit, and the 2013 MS4 Permit.

p. Declaring the City of Poway to have violated and to be in violation of its 2013 MS4 Permit and Sections 301(a) and 402(p) of the CWA for discharging non-storm water containing pollutants exceeding NALs for multiple consitutents without a separate NPDES permit.

q. Ordering Lake Poway to be added to the section 303(d) of the CWA list of impaired water bodies.

r. Ordering the City of Poway to submit an updated Waste Discharge Report and Water Quality Improvement Plan Annual Report containing its water quality exceedances and polluted non-storm water flows into Lake Poway in 2017 and 2019 to the San Diego Water Board.

s.  Ordering the City of Poway to replace the Warren Crossing with a properly engineered bridge.

t.  Ordering the City of Poway to remove its unpermitted boat dock or obtain a proper individualized CWA permit and Water Quality Certification for the boat dock;

u.  Directing the City of Poway to undertake measures, at the City's own expense and at the direction of the San Diego Water Board and/or Army Corps, to effect complete restoration of waters of the United States within Warren Creek and its tributaries, to restore the capacity of Lake Poway through sediment removal, to remove the sediment in Boulder Bay to allow the free flow of waters from Warren Creek into Lake Poway, to remove sediment and restore the wetlands surrounding the boat dock, and/or to conduct on-site and off-site mitigation for unauthorized and/or unavoidable impacts to Waters of the United States, as appropriate.

v.  Directing Defendant to undertake measures, at Defendant's own expense and at the direction of the Regional Board and Army Corps, to effect complete restoration of waters of the United States at Warren Canyon and Lake Poway and to conduct on-site and off-site mitigation for unauthorized impacts to waters of the United States, as appropriate;

w.  Ordering for the City to undertake a Supplemental Environmental Project (SEP) as defined by the EPA. Purchasing land that protects sources of

drinking water and enhancing that land to capture more stormwater and non-storm water as groundwater are the types of projects that this Court can order the City of Poway to undertake as a SEP according to EPA guidelines.

x. Ordering the City to undertake wetland repairs on APN: 278-210-1800 in the two separate streams on this parcel to slow down storm water flows and to capture more non-storm spring water flows before they enter the City's MS4.

y. Ordering the City of Poway to purchase Plaintiff's five parcels in the subwatershed area above Lake Poway for their ecological/water resource values so that Poway can properly regulate these properties as public utilities.

z. Ordering the City of Poway to remove the polluted sediment from the Boulder Bay area of Lake Poway. Currently, the polluted sediment is threatening to cause eutrophication in the stream and in the reservoir. According to the 2013 MS4 Permit, Finding 16, "[w]aste and pollutants which are deposited and accumulate in MS4 drainage structures will be discharged from these structures to waters of the U.S. unless they are removed.  These discharges may cause or contribute to, or threaten to cause or contribute to, a condition of pollution in receiving waters." As the polluted sediment is causing waste blockage reducing the capacity of the reservoir and threatens to cause eutrophication which requires toxic controls which harm fish and other aquatic life, the polluted sediment must be dredged out of the area surrounding

Warren Crossing and in the mouth of Warren Creek at Boulder Bay to stop the cycle of ongoing pollution in Lake Poway.

aa. Assessing the appropriate amount of civil monetary penalties for each violation of the CWA and the 2013 MS4 Permit as described herein on each and every day that violations of the CWA and the 2013 MS4 Permit have occurred. The maximum civil penalty for noncompliance with the CWA is currently $54,833 per day per violation for all violations since 2017.

bb. Awarding Plaintiff's reasonable costs of suit, including attorney, witness, expert and consultant fees, as permitted by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); Section 11(g)(4) of the ESA, 16 U.S.C. § 1540(g)(4); and Section 2412(d) of the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

cc. All other relief deemed appropriate by this Court.

## VII.   JURY DEMAND

301.        Plaintiff requests a jury trial on the issue of liability and any other issue cognizable by a jury.

DATED: September 18, 2019

WILLIAMS & SINGH, LLP

By:    s/ *Raj P. Singh*

_____
RAJ P. SINGH
Attorneys for Plaintiff
KEVIN T. KELLY

raj@williamsandsingh.com